**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| THE AMERICAN NATIONAL RED CROSS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| BOSH MANAGEMENT AND | ) | |
| CONSULTING, LLC, and | ) | |
| HOSPITALITY HEALTH ER, LLC, and | ) | |
| JONATHAN BOHANNON. | ) | |
| | ) | JURY DEMANDED |
| Defendants. | ) | |

## PLAINTIFF'S COMPLAINT

The American National Red Cross, otherwise known as the American Red Cross ("American Red Cross" or "Plaintiff") files this Complaint against Bosh Management and Consulting, LLC ("Bosh Management"), Hospitality Health ER, LLC ("Hospitality Health ER"), and Mr. Jonathan Bohannon ("Mr. Bohannon"), (collectively the "Defendants"), and respectfully states as follows with actual knowledge with respect to its own acts and on information and belief with respect to all other acts:

## NATURE OF THE ACTION

1. This is a civil action for trademark infringement under the Lanham Act of 1946, as amended, 15 U.S.C. § 1114, federal unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), trademark dilution under the Lanham Act, 15 U.S.C. §1125(c), violation of federal criminal law pursuant to 18 U.S.C. § 706, common law trademark infringement, false designation of origin, unfair competition, dilution, and unjust enrichment, breach of contract, and deceptive trade practices pursuant to TEX. Bus. & Com. CODE §§ 16.102, 16.103, and 17.46.

1

**PARTIES**

2.  Plaintiff American Red Cross is a federally-chartered instrumentality of the United States having a principal place of business at 431 18th Street, NW, Washington, D.C. 20006, which provides humanitarian services, including disaster relief, blood supply and other blood-related services for hospitals and patients, along with health and medical services and training.

3.  Upon information and belief, Defendant Bosh Management is a limited liability company organized under the laws of the State of Texas having a principal place of business at 5319 Katies Creek Ave, Baytown, Texas 77523-5802. Bosh Management identifies its registered agent as Jonathan Bohannon at 5319 Katies Creek Ave, Baytown, Texas 77523-5802. On information and belief, Defendant Bosh Management is a business and management consulting company which owns, manages, and/or consults for Defendant Hospitality Health ER, and which owns a federal trademark registration which is licensed to and/or used by Defendant Hospitality Health ER.

4.  Upon information and belief, Defendant Hospitality Health ER is a limited liability company organized under the laws of the State of Texas having a principal place of business at 3943 Old Jacksonville, Road, Tyler, Texas, 75701-8159, that provides medical and hospital services. Upon information and belief, Defendant Hospitality Health ER maintains emergency care centers in the State of Texas located at 4222 Seawall Blvd, Galveston, Texas 77550 (the "Galveston Location"), 311 McCann Road, Longview, Texas 75605 (the "Longview Location"), and 3943 Old Jacksonville Hwy, Tyler, Texas 75701 (the "Tyler Location").

5. Upon information and belief, Defendant Jonathan Bohannon is the Managing Member, Director, and/or President for the Galveston, Longview, and Tyler Locations of Defendant Hospitality Health ER.    Upon information and belief, Defendant Jonathan Bohannon is also the Manager and Registered Agent for Defendant Bosh Management.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the federal and state law claims pursuant to 36 U.S.C. § 300105(5), a provision of the American Red Cross charter that grants it the power to "sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." This provision confers original jurisdiction on federal courts over all cases to which the American Red Cross is a party. *Am. Nat'l Red Cross v. S. G. and A.E.*, 505 U.S. 247, 112 S Ct. 2466, 2467 (1992).

7. Additional sources for this Court's jurisdiction can be found in 15 U.S.C. §1051 *et seq.* (the federal Trademark Act), 28 U.S.C. §§1331 (federal question jurisdiction) and 1338(a) (original jurisdiction over trademark actions). This Court has jurisdiction over these claims for relief under 15 U.S.C. §§ 1116-1118.

8. In addition, supplemental jurisdiction over the related state law claims is conferred upon this Court by 28 U.S.C. § 1367(a), because the federal and state claims are based on the same operative facts, and judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdiction over the state law claims.

9. This Court also has original jurisdiction to 28 U.S.C. § 1332 (diversity jurisdiction), because plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

10. This Court has personal jurisdiction over Defendants in this action because Defendants conduct business in the Eastern District of Texas through their operation of emergency

medical centers here, Defendants have committed acts within this District giving rise to this action, and have established minimum contacts with this forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.    Further, Defendants have committed, and continue to commit, acts of infringement in this District by among other things, offering services under marks that infringe the American Red Cross' asserted trademarks herein.    Defendants Bosh Management and the Galveston, Longview, and Tyler Locations of Defendant Hospitality Health ER are also registered to do business in the state of Texas.

11. Venue is proper in this judicial district pursuant to 28 U.S.C, §1391 because a substantial part of the acts or omissions complained of herein occurred in this judicial district and Defendants are subject to personal jurisdiction in this judicial district.

## FACTUAL BACKGROUND

12. The American Red Cross is among the most famous and recognizable humanitarian organizations in the United States and in the world.    It is the largest and most prominent provider of disaster relief including shelter, food, health and mental health services, as well as education, community services, medical services, and emergency assistance inside the United States.

13. The International Red Cross and Red Crescent Movement is one of the world's oldest and largest humanitarian organizations, founded in 1863.    The American National Red Cross, a non-profit, charitable institution, was founded on May 21, 1881 as the American Association of the Red Cross.    The American Red Cross was modeled upon the International Red Cross and Red Crescent Movement to serve the United States during times of peace and war by providing disaster relief, emergency aid, first aid training

4

programs, medical, health and nursing services, humanitarian assistance, and other charitable support.

14. In 1905, the United States government chartered the American Red Cross to fulfill this nation's obligations under the Geneva treaties pertaining to the humanitarian treatment of prisoners, civilians and wounded and sick soldiers during military conflict along with executing a system of national and international relief in time of peace. See 36 U.S.C. § 300102.

15. For over 100 years, the American Red Cross has provided public health and medical services and goods, emergency relief, first aid, nursing and other health and safety services to those in need in the United States.  The American Red Cross also collects blood from volunteer donors, performs testing on the blood and manufactures blood components, and supplies approximately 40 percent of the blood used by the nation's hospitals and medical centers for life-saving transfusions, thereby increasing its visibility and recognition to the general public.

16. The American Red Cross provides the foregoing goods and services as an important part of its humanitarian mandate.

**THE AMERICAN RED CROSS' FAMOUS RED CROSS EMBLEM**

17. The American Red Cross is a unique organization with trademark rights that derive not only from federal and state trademark law, but also international law and federal criminal law.

18. Since at least as early as 1881, the American Red Cross has used and continues to use its world famous Greek red cross (the "Red Cross Emblem") in connection with various goods and services, including without limitation, medical, dental, health, and safety

services,  fundraising,  nursing  rescue  services,  blood  collection,  and  disaster  relief

services.   A representative  image  of the Red Cross Emblem  is depicted below in Figure  1:

**Figure 1**



19. In  recognition  of  the  importance  of  the  American  Red  Cross'  humanitarian  mission  and

the  significant  social benefits  that  it  provides,  and  based  on  international  law,  Congress

long  ago  granted  the  American  Red  Cross  the  exclusive  right  to  "have  and  use"  the  Red

Cross  Emblem,  subject  only  to  minor  exceptions  that  do  not  apply  here.   36  U.S.C.  §

300106.

20. Specifically,  in  1905,  the  United  States  Congress  recognized  the  importance  of  protecting

the  Red  Cross  Emblem  from  unauthorized  use  and  granted  the  American  Red  Cross

(along  with  its  duly  authorized  employees  and  agents  and  the  sanitary  and  hospital

authorities  of  the  armed  forces  of  the  United  States)  the  exclusive  right  to  use  the  Red

Cross  Emblem  under  18  U.S.C.  §  706,  which  is  known  as  the  "Red  Cross  Statute."  The

Red  Cross  Statute  protects  the  Red  Cross  Emblem  from  unauthorized  third-party  use  and

states  in part:

> Whoever, whether a corporation, association or person, other than the American National Red
> Cross and its duly authorized employees and agents and the sanitary and hospital authorities of
> the armed forces of the United States, uses the emblem of the Greek red cross on a white ground,
> or any sign or insignia made or colored in imitation thereof or the words "Red Cross" or "Geneva
> Cross" or any combination of these words--

Shall be fined under this title or imprisoned not more than six months, or both.

21. In recognizing such congressional intent, the United States Patent and Trademark Office



("USPTO") provided special protection for the Red Cross Emblem (          ) by

memorializing the American Red Cross' exclusive ownership of the Red Cross Emblem

and identifying the Red Cross Emblem as non-registrable subject matter in **all**

international classes under U.S. Serial No. 89000081 (the "'081 Application"), on the

Principal Register. A copy of the USPTO status report of the above designation is

attached hereto as Exhibit A.

22. In addition to '081 Application, the American Red Cross also owns, among others, the

following valid and subsisting U.S. federal trademark registrations for its Red Cross

Emblem for, *inter alia*, medical, health and safety goods and services, as shown below:

| Mark | Registration No. Registration Date | Products/Services First Use in Commerce |
|---|---|---|
| ✚  Mark Description:  The mark consists of a red cross. | 2740133 7/22/2003 | Charitable fundraising in Int'l Class 36 First Use in Commerce: 12-31-1881 |
| ✚ | 2818967 3/02/2004 | Charitable services, namely, providing financial assistance and support to victims of disasters and providing information and consultation related thereto in Int'l Class 36 First Use in Commerce: 12-31-1881  Charitable services, namely, providing |

| | | |
|---|---|---|
| Mark Description: The mark consists of a red cross. | | relief and support to victims of disasters by providing food and temporary housing shelters and information and consultation related thereto in Int'l Class 43<br>First Use in Commerce: 12-31-1881 |
| Mark Description: The mark consists of a red cross. | 2797013<br>12/23/2003 | Educational services, namely training in the areas of health and safety in Int'l Class 41<br>First Use in Commerce: 12-31-1903 |
| Mark Description: The mark consists of a red Greek cross.<br>Color Claimed: Red | 4773009<br>7/14/2015 | Nursing services in Int'l Class 44<br>First Use in Commerce: 1909 |
| Mark Description: The mark consists of a red cross. | 2771239<br>10/7/2003 | Blood banks, collection and preservation of human blood in Int'l Class 44<br>First Use in Commerce: 12-31-1938 |
| Mark Description: The mark consists of a Greek cross | 4319642<br>4/16/2013 | Promoting public interest and awareness of the need for humanitarian services in the fields of blood collection and donation, disaster and emergency preparedness and response, health and safety, and support for the armed forces; charitable services, namely, organizing and conducting volunteer programs and community service |

| | | |
|---|---|---|
| appearing on a novelty button-style image.<br>Color is not a claimed feature. | | projects in the fields of blood collection and donation, disaster and emergency preparedness and response, health and safety, and support for the armed forces; charitable services, namely, providing administrative coordination of humanitarian services in the fields of blood collection and donation, disaster and emergency preparedness and response, health and safety, and support for the armed forces; charitable services, namely, providing consulting services related to the administrative coordination of organizations providing humanitarian services in the fields of blood collection and donation, disaster and emergency preparedness and response, health and safety, and support for the armed forces in Int'l Class 35.<br>First Use in Commerce: 10-14-2011<br><br>Charitable fundraising in Int'l Class 36<br>First Use in Commerce: 11-28-2011 |
| <br><br>Mark Description: The mark consists of a Greek cross appearing on a novelty button-style image.<br> Color is not a claimed feature. | 4612314<br>9/30/2014 | Downloadable mobile applications for providing and sharing volunteer information, volunteer opportunities and volunteer recovery information in the field of disaster preparedness and disaster relief; downloadable mobile applications for providing information regarding disaster preparedness, storm tracking, and relief and recovery information; downloadable mobile applications for providing and sharing tools for disaster preparedness and relief and recovery information, namely, providing audible alerts and audible sirens for activation in an emergency, flashlights, shelter and hospital locators, safety notifications sent via e-mail, text message, and social networks; downloadable mobile applications providing first aid information; downloadable mobile applications providing first aid information for pets; and downloadable |

| | | |
|---|---|---|
| | | mobile applications providing first aid tools, namely, videos, interactive quizzes, step-by-step instructions for rendering first aid, click-to-call capabilities to access emergency telephone numbers in Int'l Class 9<br>First Use in Commerce: 6-14-2012 |
| <br>Mark Description: The mark consists of a Greek cross in the color red.<br>Color Claimed: Red | 4612315<br>9/30/2014 | Downloadable mobile applications for providing and sharing volunteer information, volunteer opportunities and volunteer recovery information in the field of disaster preparedness and disaster relief; downloadable mobile applications for providing information regarding disaster preparedness, storm tracking, and relief and recovery information; downloadable mobile applications for providing and sharing tools for disaster preparedness and relief and recovery information, namely, providing audible alerts and audible sirens for activation in an emergency, flashlights, shelter and hospital locators, safety notifications sent via email, text message, and social networks; downloadable mobile applications providing first aid information; downloadable mobile applications providing first aid information for pets; and downloadable mobile applications providing first aid tools, namely, videos, interactive quizzes, step-by-step instructions for rendering first aid, click-to-call capabilities to access emergency telephone numbers in Int'l Class 9<br>First Use in Commerce: 6-14-2012 |
| <br>Mark Description: The mark consists of red Greek cross over the words "AMERICAN | 4120698<br>4/3/2012 | Educational services, namely, providing training and continuing professional education courses in the field of health, medicine, immunology, blood banking, transfusion and human resources and business management in the transfusion medicine and blood banking laboratory fields in Int'l Class 41 |

| | | |
|---|---|---|
| RED CROSS" on two lines in stylized upper-and-lower-case lettering located to the left of a fairly large red rectangle sign containing the word "SUCCESS" in white, stylized capital letters. Under the rectangle, are the words "SERIES OF UNIQUE CREATIVE CONTINUING EDUCATION SELF STUDIES" on two lines in upper-and-lower-case lettering with the bottom line, "EDUCATION SELF STUDIES" more widely space to be coterminous with the upper line "SERIES OF UNIQUE CREATIVE CONTINUING".<br><br>Colors Claimed: Red, White | | First Use in Commerce: 9-17-2009 |

True and correct printouts from the U.S. Patent and Trademark Office ("PTO") TESS and TSDR databases, including assignment information, are attached as Exhibit B.

23. U.S. Registration Nos. 2740133; 2771239; 2797013; 2818967; 2820772; 2818966; and 2752477 have become incontestable pursuant to 15 U.S.C. § 1065.

24. The American Red Cross also owns longstanding nationwide common law rights to the Red Cross Emblem in conjunction with numerous services and goods, including but not limited to medical, health, and emergency services. As described above, throughout its history, the American Red Cross has continuously and substantially exclusively used the Red Cross Emblem in connection with its congressionally chartered, charitable mission to provide a wide range of, *inter alia*, health, medical and humanitarian services including disaster relief, emergency aid, medical support, first aid, nursing, blood collection, and

other health and safety services across the nation for over 100 years. The American Red Cross has used and also uses its Red Cross Emblem on or in connection with various health and medical goods that it offers for sale to the United States public.

25. The American Red Cross has provided its services and goods to tens of millions of people throughout the United States by and under its Red Cross Emblem.

26. The Red Cross Emblem also appears throughout the American Red Cross' official website at http://www.redcross.org/ along with appearing on its goods, labels, packaging, advertising, promotional and collateral materials relative to its charitable activities.    See attached screenshots from the American Red Cross' website attached hereto as Exhibit C.

27. To further its humanitarian objectives, the American Red Cross has also expended and continues to expend significant amounts of money and other resources to promote in the United States its services and goods in connection with its Red Cross Emblem.    Indeed, the American Red Cross considers its Red Cross Emblem to be among its most valuable assets. The Red Cross Emblem serves as the most important trademark in American Red Cross' family of trademarks.

28. Because Congress has granted the American Red Cross exclusive rights to use the Red Cross Emblem for any and all goods and services, because international humanitarian law places strict limitations on the use of the Red Cross Emblem through the Geneva treaties, and because the American Red Cross has engaged in continuous, consistent, active, and substantial use and promotion of the Red Cross Emblem for over a century, the Red Cross Emblem is widely recognized by the general public in the United States as a source identifier for, and trademark of, the American Red Cross, the American Red Cross has

established significant goodwill with respect to the Red Cross Emblem that inures to the benefit of the American Red Cross.

**DEFENDANT'S UNAUTHORIZED USE OF THE RED CROSS EMBLEM**

29. Upon information and belief, in or around December of 2015, Defendants began operating emergency medical centers in Galveston, Longview, and, Tyler, Texas under



the logo                                      , which incorporated a Greek red cross as part of the letter E (the "Infringing Logo").

30. On January 15, 2016, Defendant Bosh Management applied for a trademark registration with the USPTO for the Infringing Logo under U.S. Trademark Application Serial No. 86876459 for emergency medical services in Class 44 (the "Application"). The Application claimed the colors blue, gray, and red as features of the Infringing Logo and submitted certain specimens of use, as shown below in Figures 2 and 3 below:

**<u>Figure 2</u>**



Figure 3



A copy of the Application for U.S. Trademark Application Serial No. 86876459, including the specimens above, obtained from the USPTO Trademark Status and Retrieval Document System ("TSDR") is attached hereto as Exhibit D.

31. Upon learning of the Application for the Infringing Logo, the American Red Cross contacted Defendant Bosh Management in writing on August 15, 2016, to advise of its exclusive rights to use the Red Cross Emblem pursuant to US federal trademark law and criminal law, and to request that Defendant Bosh Management amend its Application to delete the claim of red for the Greek cross in its Infringing Logo, to agree not to use the color red for the Greek cross in its Infringing Logo, and requesting that Defendants promptly cease any and all use of the Infringing Logo and any other uses of a Greek red cross in commerce. See Exhibit E for a copy of the demand letter referenced above.

32. On April 26, 2017, the American Red Cross filed a Notice of Opposition against the Application with the Trademark Trial and Appeal Board ("TTAB"), which action was subsequently assigned Opposition No. 91234191, opposing registration of the Infringing Logo (the "Opposition") on multiple grounds including likelihood of confusion, dilution, false association under Section 2(a), lack of bona fide intent, and violation of 18 USC Section 706. A true and correct copy of the Notice of Opposition is attached hereto as Exhibit F.

33. Following settlement negotiations between the American Red Cross and Defendants, the American Red Cross and Defendant Bosh Management entered into a Settlement Agreement on July 26, 2017 to resolve the parties' dispute regarding the Infringing Logo (the "Settlement Agreement"). Defendant Jonathan Bohannon signed the Settlement Agreement on behalf of Bosh Management. Under the terms of the parties' Settlement Agreement, Defendants expressly agreed to the following:

   a. Within thirty (30) days of the Effective Date, to file a request with the TTAB to amend the mark as it appeared in the Application to black and white with no claim to color, and to change the specimen of use to one that did not show the Greek cross in the color red, and to refrain from using a Greek cross or any design made or colored in imitation thereof in any specimen filed with the USPTO in support of the Application (Paragraph 1);

   b. To phase out, within three months from the Effective Date, any and all uses of the Greek red cross or any design made or colored in imitation thereof, in association with its business, goods and/or services, including but not limited to all materials,

and similar displays, advertising and marketing materials, uniforms and articles of clothing, stationary, and business cards. (Paragraph 2);

c.   With respect to signage, the parties acknowledged that signage that included a depiction of part of the Logo had been installed on two buildings located in Texas, and that Defendants would change this signage to remove the Greek red cross element therefrom within six months from the Effective Date. Defendants also agreed not to install any other such signs incorporating the Greek red cross in the future (Paragraph 2);

d.   To phrase out no later than thirty (30) days from the Effective Date, and upon such date to cease any and all use of, the Greek red cross as it appeared in the Application, or any design made or colored in imitation of the Greek red cross, in association with their business in connection with all electronic forms, including but not limited to, all social media accounts, email signatures, websites, and advertisements (Paragraph 3); and

e.   To refrain from installing or creating in their facilities or electronic or physical advertising, the Greek red cross, or any design made or colored in imitation thereof, in connection with Defendants' business in the future (Paragraph 4 ).

In exchange for Defendants' performance of the foregoing, the American Red Cross agreed to release and discharge its claims against Defendants. A fully executed copy of the Settlement Agreement is attached hereto as Exhibit G.

34. In accordance with the terms of the Settlement Agreement, Defendants amended the Application to black and white with no claim to color, and changed the specimens of use submitted in connection with the Application, such that they did not show the Greek

17

cross in the color red.  With the consent of the American Red Cross following entry of such amendment, the TTAB dismissed the Opposition against the Application with prejudice.

35. Since the parties' execution of the Settlement Agreement, Defendants have taken action in direct violation of the terms of said Agreement.  After the expiration of the phase-out periods provided in the Settlement Agreement, Defendants adopted and commenced use of a slightly amended logo which continues to include a Greek red cross on a white background, merely eliminating the separation that previously existed above and below the Greek Red Cross to connect it to the remainder of the letter E (the "New Infringing Logo").  Defendants are currently using the New Infringing Logo in connection with their emergency care centers in contravention of the express terms of Settlement Agreement, U.S. trademark law, and U.S. criminal law.  A representative image of the New Infringing Logo is shown below in Figure 4

**Figure 4**



36. This New Infringing Logo appears on Defendant Hospitality Health ER's social media accounts, and on the signage at the Galveston, Longview, and Tyler Locations. Representative images of Defendants' use of the New Infringing Logo can be seen in Figures 5-7 below, as well as in Exhibits H-J attached.

**Figure 5**



Source: https://www.facebook.com/HospitalityHealthERTyler/

**Figure 6**



Source: https://www.facebook.com/hhergalveston/

Figure 7



37. Defendants' use of the New Infringing Logo is nearly identical to the exact use proscribed by the Settlement Agreement, shown in Figure 8 below:

Figure 8

Infringing Logo                                    New Infringing Logo



38. As illustrated above, the changes made to Defendants' New Infringing Logo are minute and *de minimis*, such that the New Infringing Logo still includes a Greek red cross, or a colorable imitation thereof, on a white background, in violation of the parties' Settlement Agreement, U.S. trademark law, and U.S. criminal law.

39. Further, after the expiration of the phase-out periods provided in the Settlement Agreement, Defendants also adopted and began using a design comprised of a partially red Greek cross (the "Shaded Red Cross") on signage at their emergency care center locations.    Images of such signage from the Galveston and Longview Locations,

respectively, are shown in Figures 9 and 10 below and Exhibits K and L: In fact, the Infringing Logo still appears on the signage shown in Figure 10 below.

**Figure 9**



Source: https://www.galvnews.com/business/buzz/article_b811ec78-48ad-5fd2-9f53-acbf4c712829.html

Figure 10



Source:https://www.google.com/maps/place/Hospitality+Health+ER/@32.53615,-
94.7541594,3a,30y,281.61h,90.61t/data=!3m7!1e1!3m5!1snl514UaHdjETPjUtBt25Uw!2e0!6s%
2F%2Fgeo0.ggpht.com%2Fcbk%3Fpanoid%3Dnl514UaHdjETPjUtBt25Uw%26output%3Dthu
mbnail%26cb_client%3Dmaps_sv.tactile.gps%26thumb%3D2%26w%3D203%26h%3D100%26
yaw%3D266.54376%26pitch%3D0%26thumbfov%3D100!7i13312!8i6656!4m5!3m4!1s0x8636
38cc9184d33b:0xab599a7bb36e7bf!8m2!3d32.5359025!4d-94.7544659

40. Defendants' use of the Shaded Red Cross is proscribed by federal criminal law, U.S.

trademark law, and the terms of the Settlement Agreement.

22

41. By letters dated April 26, 2018 and June 4, 2018, the American Red Cross and its outside counsel objected to Defendants' adoption and use of the New Infringing Logo and the Shaded Red Cross (collectively, the "Infringing Marks"), as a violation of the parties' Settlement Agreement, as well as federal criminal law and U.S. trademark law.    The American Red Cross advised that Defendants could comply with their obligations under the Settlement Agreement and avoid contravening federal and state law, simply by changing the color of the Greek cross in Defendants' Infringing Marks to a color other than red.  Copies of these communications are attached hereto as Exhibit M.

42. However, as of the filing of this Complaint, Defendants have refused to cease use of the Infringing Marks and in fact have not stopped their unauthorized use of the Infringing Marks, despite notice to them of the American Red Cross' rights.

43. Upon information and belief, Defendants have deliberately adopted and used the Infringing Marks in an effort to trade upon the goodwill and reputation of the American Red Cross and in willful disregard of the American Red Cross' exclusive rights to the Red Cross Emblem.

44. Upon information and belief, Defendants have taken these actions with the intent to confuse actual and potential customers into believing that Defendants are affiliated with or are otherwise associated with or sponsored by the American Red Cross.

45. Defendants' use of the Infringing Marks has caused and/or is likely to continue to cause a likelihood of confusion with regard to the Red Cross Emblem, as well as irreparable injury to the public and to the American Red Cross for which there is no adequate remedy at law.

46. Defendants' Infringing Marks dilute and diminish the distinctive nature of the Red Cross Emblem of the American Red Cross.   Persons who encounter Defendants' Infringing Marks are likely to mistakenly believe that the American Red Cross has authorized, endorsed, approved or sponsored Defendants' emergency medical care centers, that Defendants' centers are affiliated or connected with the American Red Cross, or that the American Red Cross has sanctioned Defendants' centers and use of the Red Cross Emblem.

47. The American Red Cross has suffered and will continue to suffer irreparable damage to its valuable Red Cross Emblem arising from Defendants' continued and ongoing infringement and violation thereof.

48. Defendants have been unjustly enriched on account of their unlawful conduct described above.

49. Defendants acted and continue to act with full knowledge of the American Red Cross' prior rights in and to the Red Cross Emblem, or any mark confusingly similar.

## COUNT I
### Federal Trademark Infringement
### (15 U.S.C. § 1114(1))

50. The American Red Cross specifically hereby incorporates by reference and re-alleges the allegations asserted in the preceding paragraph numbers 1-49 as if fully set forth herein.

51. The American Red Cross owns numerous federally registered trademarks for the Red Cross Emblem, which registrations are valid and subsisting.

52. The American Red Cross has continually used its trademarks for the Red Cross Emblem as a source identifier in connection with its products and services in interstate commerce throughout the United States.   The American Red Cross' rights in its Red Cross Emblem have priority over Defendants' use of the Infringing Marks by virtue of the American Red

Cross' continuous use of them in commerce and the American Red Cross' registration of them with the USPTO well before Defendants began using the Infringing Marks.

53.   Without authorization or consent of the American Red Cross, Defendants render their related and/or overlapping services and provide related advertising thereto to the general public using Infringing Marks that are comprised of or incorporate a Greek red cross which is identical and/or confusingly similar to the Red Cross Emblem.

54.   Defendants' unauthorized use of the Infringing Marks is likely to cause confusion, mistake, and deception among the general public as to the origin of Defendants' services, or as to whether Defendants are sponsored by, affiliated with, or otherwise connected to the American Red Cross, constituting trademark infringement in violation of 15 U.S.C. § 1114(1).

55.   By using the marks of the American Red Cross by and through the Infringing Marks, and by rendering services to the general public in connection with the Infringing Marks, without the American Red Cross' authorization, Defendants are depriving the American Red Cross of its exclusive right to control and benefit from its trademarks.  If permitted to continue, Defendants' actions will have a substantial and adverse effect on the ability of the trademarks of the American Red Cross to exclusively identify the goods and services of the American Red Cross.

56.   On information and belief, the acts of Defendants are calculated to deceive the relevant public into purchasing Defendants' services in the mistaken belief that Defendants' services are sponsored or approved by, connected with, or rendered under the supervision of the American Red Cross.

57. By using the American Red Cross' registered trademarks and/or confusingly similar designations thereto, and by offering services to the general public in connection with such marks notwithstanding Defendants' knowledge as to the unauthorized use, Defendants have willfully, intentionally and knowingly infringed the American Red Cross' rights.

58. As a result of the foregoing acts of Defendants, the American Red Cross has suffered damages and Defendants have been unjustly enriched.

59. Unless permanently enjoined, the acts of Defendant alleged herein will continue to cause the American Red Cross irreparable injury that cannot adequately be calculated or compensated by money damages.

**COUNT II**
**Federal Unfair Competition and False Designation of Origin**
**(15 U.S.C. § 1125(a))**

60. The American Red Cross specifically hereby incorporates by reference and re-alleges the allegations asserted in the preceding paragraphs as if fully set forth herein.

61. Defendants' use of the Infringing Marks has and/or is likely to cause confusion, mistake, and deception among the general public as to the origin of the goods and services, or as to whether Defendants are sponsored by, affiliated with, or otherwise connected with the American Red Cross in violation of 15 U.S.C. §1125(a).

62. The American Red Cross has been damaged by Defendants' activities and conduct. As a result of the foregoing acts of Defendants, Defendants have profited thereby and, unless their conduct is enjoined, the American Red Cross' reputation and goodwill will continue to suffer irreparable injury that cannot be adequately calculated or compensated by money damages.

63. By using the American Red Cross' trademarks by and through the Infringing Marks in connection with the rendering to the general public of emergency medical care services through its centers, Defendants have intentionally and knowingly infringed the American Red Cross' rights.

**COUNT III**
**Federal Trademark Dilution**
**(15 U.S.C. § 1125(c))**

64. The American Red Cross specifically hereby incorporates by reference and re-alleges the allegations asserted in the preceding paragraphs as if fully set forth herein.

65. The Red Cross Emblem of the American Red Cross is a famous mark in the United States and became a famous mark long before Defendants' unlawful conduct in using the Infringing Marks as alleged herein.

66. The Red Cross Emblem is widely recognized by the general public in the United States as a source identifier and particularly as a mark belonging to the American Red Cross.

67. The American Red Cross' Red Cross Emblem is inherently distinctive, and has become a well-known and famous mark within the meaning of 15 U.S.C. §1125(c)(1) well prior to any use Defendants can viably assert in the Infringing Marks.

68. Defendants' use of the Infringing Marks has diluted, or is likely to dilute, by blurring or tarnishment, the distinctive quality of the famous Red Cross Emblem in violation of 15 U.S.C. § 1125(c).

69. Upon information and belief, the acts of Defendants are calculated, with willful intent, to dilute the American Red Cross' Red Cross Emblem.

70. As a result of the foregoing acts, the American Red Cross has suffered damages and Defendants have been unjustly enriched.

71. The American Red Cross has been, and absent injunctive relief, will continue to be, irreparably harmed by Defendants' unlawful conduct. Unless permanently enjoined, the acts of Defendants alleged herein will continue to cause the American Red Cross irreparable injury that cannot be adequately calculated or compensated by money damages.

72. Defendants' acts resulting in actionable dilution as alleged above entitle the American Red Cross to an injunction pursuant to 15 U.S.C. §1125(c)(1).

### COUNT IV
### Illegal Use of the Red Cross Symbol
### (18 U.S.C. § 706)

73. The American Red Cross specifically hereby incorporates by reference and re-alleges the allegations asserted in each of preceding paragraphs as if fully set forth herein.

74. Defendants' Infringing Marks include a Greek red cross on a white ground, which the American Red Cross has not authorized, in violation of 18 U.S.C. §706.

75. Defendants' Infringing Marks are comprised of or include are exact copies or colorable imitations of the Red Cross Emblem, which the American Red Cross has not authorized in violation 18 U.S.C. §706.

76. Defendants are not duly authorized employees or agents of the American Red Cross, nor are they sanitary and hospital authorities of the armed forces of the United States.

77. The American Red Cross has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' unlawful conduct.  Unless permanently enjoined and/or penalized in accordance with 18 U.S.C. § 706, the acts of Defendants alleged herein will continue to cause the American Red Cross irreparable harm for which it has no adequate remedy at law.

## COUNT V
## Trademark Infringement under Texas State Law
### (Tex. Bus. & Com. Code § 16.102)

78. The American Red Cross specifically hereby incorporates by reference and re-alleges the allegations asserted in the preceding paragraphs as if fully set forth herein.

79. The American Red Cross owns numerous federally registered trademarks for the Red Cross Emblem, which registrations are valid and subsisting.

80. The American Red Cross has continually used its trademarks for the Red Cross Emblem as a source identifier in connection with its products and services in interstate commerce throughout the United States.  The American Red Cross' rights in its marks have priority over Defendants' use of the Infringing Marks by virtue of the American Red Cross' continuous use of its marks in commerce and the American Red Cross' registration of its marks with the USPTO well before Defendants began using the Infringing Marks.

81. Without authorization or consent of the American Red Cross, Defendants render their services in the state of Texas and provide related advertising thereto to the general public in the state of Texas using Infringing Marks that are comprised of or incorporate a Greek red cross that is identical and/or confusingly similar to the American Red Cross' Red Cross Emblem.  Furthermore, Defendants provide services to the general public in the state of Texas that are in a related field — i.e., health and emergency services — as those provided by the American Red Cross.

82. Defendants' unauthorized use of the Infringing Marks is likely to cause confusion, mistake, and deception among the general public as to the origin of Defendants' services, or as to whether Defendants are sponsored by, affiliated with, or otherwise connected to the American Red Cross, constituting trademark infringement in violation of Texas Business & Commerce Code § 16.102.

83. By using the marks of the American Red Cross by and through the Infringing Marks, and by rendering services to the general public in the state of Texas in connection with the Infringing Marks, without the American Red Cross' authorization, Defendants are depriving the American Red Cross of its exclusive right to control and benefit from its trademarks. If permitted to continue, Defendants' actions will have a substantial and adverse effect on the American Red Cross and the ability of its marks to exclusively identify the American Red Cross and its goods and services.

84. On information and belief, the acts of Defendants are calculated to deceive the relevant public into purchasing Defendants' services in the mistaken belief that Defendants' services are sponsored or approved by, connected with, or rendered under the supervision of the American Red Cross.

85. By using the American Red Cross' registered trademarks and confusingly similar designations thereto, and by offering services to the general public in the state of Texas in connection with such marks notwithstanding Defendants' knowledge as to the unauthorized use, Defendants have intentionally and knowingly infringed the rights of, and the marks of, the American Red Cross.

86. As a result of the foregoing acts of Defendants, the American Red Cross has suffered damages and Defendants have been unjustly enriched.

87. Unless permanently enjoined, the acts of Defendant alleged herein will continue to cause the American Red Cross irreparable injury that cannot adequately be calculated or compensated by money damages.

**COUNT VI**
**Trademark Dilution under Texas State Law**
**(Tex. Bus. & Com. Code § 16.103)**

88. The American Red Cross specifically hereby incorporates by reference and re-alleges the allegations asserted in the preceding paragraphs as if fully set forth herein.

89. The Red Cross Emblem of the American Red Cross is a famous mark in the state of Texas, amongst other geographic areas, and became a famous mark long before Defendants' unlawful conduct in using the Infringing Marks as alleged herein.

90. The Red Cross Emblem is widely recognized by the general public in the state of Texas, amongst other geographic areas, as a source identifier and particularly as a mark belonging to the American Red Cross.

91. As stated herein, through extensive and continuous use, sales, advertising, and promotion, the American Red Cross' Red Cross Emblem is inherently distinct and has acquired distinctiveness, within the meaning of Tex. Bus. & Com. Code § 16.103.

92. Defendants' unauthorized use of the Infringing Marks in the United States and the state of Texas has diluted, or is likely to dilute, the distinctive quality of the famous Red Cross Emblem in violation of the Tex. Bus. & Com. Code § 16.103.

93. Upon information and belief, Defendants adopted the Infringing Marks with the express purpose of trading on the American Red Cross' goodwill and reputation, and with the willful intent to dilute the American Red Cross' Red Cross Emblem.

94. As a result of the foregoing acts, the American Red Cross has suffered damages and Defendants have been unjustly enriched.

95. The American Red Cross has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' unlawful conduct.  Unless permanently enjoined, the acts of Defendants alleged herein will continue to cause the American Red Cross

31

irreparable injury that cannot be adequately calculated or compensated by money damages.

## COUNT VII
### Deceptive Trade Practices under Texas State Law
### (Tex. Bus. & Com. Code § 17.46)

96. The American Red Cross specifically hereby incorporates by reference and re-alleges the allegations asserted in the preceding paragraphs as if fully set forth herein.

97. Defendants' use of the Infringing Marks constitutes a deceptive practice in violation of Tex. Bus. & Com. Code § 17.46, because it is likely to deceive and confuse the public as to the source, sponsorship, approval or certification of Defendants' services and cause confusion as to whether Defendants are connected or associated with, or certified or approved by, the American Red Cross.

98. Defendants' unfair business practices have caused and will continue to cause the American Red Cross irreparable harm. Unless permanently enjoined, the acts of Defendants will continue to cause the American Red Cross irreparable injury that cannot be adequately calculated or compensated by money damages.

## COUNT VIII
### Trademark Infringement, False Designation of Origin, Unfair Competition and Dilution under Texas Common Law

99. The American Red Cross specifically hereby incorporates by reference and re-alleges the allegations asserted in the preceding paragraphs as if fully set forth herein.

100.　　The American Red Cross owns numerous federally registered trademarks for the Red Cross Emblem, which registrations are valid and subsisting.

101.　　The Red Cross Emblem of the American Red Cross is a famous, distinctive mark and was so long before Defendants' unlawful conduct alleged herein.

102.　　The Red Cross Emblem is widely recognized by the general public in the United States as a source identifier and particularly as a mark belonging to the American Red Cross.

103.　　Without authorization or the consent of the American Red Cross, Defendants render their services and provide related advertising thereto to the general public using Infringing Marks that are comprised of or incorporate a Greek red cross that is identical and/or confusingly similar to the American Red Cross' trademarks. Furthermore, Defendants provide services to the general public that are in a related field — i.e., health and emergency services — as those provided by the American Red Cross under its marks.

104.　　Defendants' use of the Infringing Marks is likely to deceive and cause confusion, mistake and deception among the public as to the origin of Defendants' services, as to whether Defendants are sponsored by, affiliated with, or otherwise connected to the American Red Cross, constituting trademark infringement, false designation of origin, unfair competition and dilution under the law of the State of Texas.

105.    By using the marks of the American Red Cross by and through the Infringing Marks, and by rendering services to the general public in connection with the Infringing Marks, without the American Red Cross' authorization, Defendants are depriving the American Red Cross of its exclusive right to control and benefit from its trademarks. If permitted to continue, Defendants' actions will have a substantial and adverse effect on the American Red Cross and its marks.

106.    Defendants' use of the Infringing Marks has diluted, or is likely to dilute, the distinctive quality of the famous Red Cross Emblem.

107.    On information and belief, the acts of Defendants are calculated to deceive the relevant public into purchasing Defendants' services in the mistaken belief that Defendants' services are sponsored or approved by, connected with, or rendered under the supervision of the American Red Cross.

108.    As a result of the foregoing acts, the American Red Cross has suffered damages and Defendants have been unjustly enriched.

109.    The American Red Cross has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' unlawful conduct.   Unless permanently enjoined, the acts of Defendants alleged herein will continue to cause the American Red Cross irreparable injury that cannot be adequately calculated or compensated by money damages.

## COUNT IX
### Unjust Enrichment under Texas Common Law

110.     The American Red Cross specifically hereby incorporates by reference and re-alleges the allegations asserted in the preceding paragraphs as if fully set forth herein.

111.     Defendants have unjustly enriched themselves through the receipt of monies resulting from their unlawful use of the Infringing Marks in connection with their medical, emergency services.

112.     Defendants' receipt of monies came, and continues to come, through their own, active efforts in adopting and using the Infringing Marks in connection with their medical, emergency services to the detriment of the American Red Cross' rights in and to its Red Cross Emblem.

113.     Defendants' profiting through use of the Infringing Marks is knowing and intentional and continues to occur notwithstanding actual and constructive notice to them of the American Red Cross' rights to its Red Cross Emblem.

114.     By reason of the foregoing, Defendants have unjustly enriched themselves in an unknown amount, and the American Red Cross is entitled to just compensation under the common law of the State of Texas.

## COUNT X
### Breach of Contract As to Defendants Bosh Management and Mr. Bohannon

115.     The American Red Cross specifically hereby incorporates by reference and re-alleges the allegations asserted in the preceding paragraphs as if fully set forth herein.

116.     As described above, the American Red Cross and Defendants are parties to the fully executed, binding Settlement Agreement, whereby Defendants agreed to phase out, within three months of the Effective Date, namely, July 26, 2017, any and all uses of the Greek red cross or any design made or colored in imitation thereof, in association with its

business, goods and/or services; to remove the Greek red cross element from Defendants' signage within six months from the Effective Date (namely, July 26, 2017), to refrain installing any other such signs incorporating the Greek red cross in future; to phase out no later than thirty (30) days from the Effective Date (namely, July 26, 2017), and upon such date to cease any and all use of, the Greek red cross as it appeared in the Application, or any design made or colored in imitation of the Greek red cross, in association with its business in connection with all electronic forms; and to refrain from installing or creating in its facilities or in its electronic or physical advertising, the Greek red cross, or any design made or colored in imitation thereof, in connection with its business in the future . In exchange for performance of the foregoing, the American Red Cross agreed to release and discharge its claims against Defendants.

117.     By adopting, using, and continuing use of the Infringing Marks, which are comprised of or incorporate the Greek red cross or color imitations thereof, without the American Red Cross' authorization or approval, Defendants have breached the foregoing provisions, contained in Paragraphs 2-4 of the Settlement Agreement.

118.     Defendants' breaches of the Settlement Agreement threaten the American Red Cross with irreparable harm in the form of, among other things, trademark infringement, trademark dilution, unfair competition, and loss of control over the display and use of the Red Cross Emblem.

119.     By reason of the foregoing, the American Red Cross is entitled to preliminary and permanent injunctive relief preventing Defendants from using the Infringing Marks at any of its emergency medical center locations, as well as damages in an amount to be proved at trial.

## JURY DEMAND

The American National Red Cross hereby demands a trial by jury on all claims and issues so triable, pursuant to Federal Rule of Civil Procedure 38.

## PRAYER FOR RELIEF

WHEREFORE, The American National Red Cross prays:

A.    For judgment that Defendants have:

   (i)    violated Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§1114 and 1125(a), and that such violations have been willful pursuant to 15 U.S.C. §1117;

   (ii)    violated Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c) and that such violations have been willful pursuant to 15 U.S.C. §1117;

   (iii)    violated 18 U.S.C. §706;

   (iv)    engaged in trademark infringement, trademark dilution and deceptive trade practices in violation of the statutory law of Texas and that such violations have been willful;

   (v)    engaged in trademark infringement, false designation of origin, unfair competition and dilution in violation of the common law of the State of Texas and that such violations have been willful;

   (vi)    been unjustly enriched in violation of Texas common law; and

   (vii)    have committed a breach of contract.

B.    For an injunction preliminarily and permanently restraining and enjoining Defendants, their officers, agents, servants, employees, attorneys, parent companies and affiliates, successors and assigns and subsidiaries and all those persons in active concert or participation therewith, from:

(i)    using the Infringing Marks, the Red Cross Emblem, any imitation or legal equivalent thereof, or any other mark or logo which is confusingly similar to the Red Cross Emblem and from continuing their unfair methods of competition and unfair and deceptive acts and practices;

(ii)    committing any acts calculated to cause the public to believe that Defendants and/or any of Defendants' services are associated, affiliated or sponsored by the American Red Cross or are authorized or approved by the American Red Cross, in whole or in part;

(iii)    otherwise competing unfairly with the American Red Cross in any manner, including without limitation, using a false designation of origin or using a mark that will dilute the Red Cross Emblem of the American Red Cross; and

(iv)    attempting, causing, or assisting any of the above-described acts.

C.    For an order requiring Defendants to file with the Court and serve on the American Red Cross within thirty (30) days after service of the injunction a written report under oath pursuant to 15 U.S.C. §1116, setting forth in detail the manner and form in which Defendants have complied with the injunction;

D.     For an award of the damages suffered by the American Red Cross and an award of profits, damages, costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U S C. §1117, and by the common and statutory law of the State of Texas, such damages and profits to be trebled on the ground that Defendants' misconduct has been willful, deliberate, knowing, intentional and in bad faith;

E.     For an order requiring Defendants to disseminate corrective advertisements in a form and frequency approved by the Court to acknowledge their violations of, inter alia, Sections 43(a) and (c) of the Lanham Act and the common and statutory law of the State of Texas;

F.     For an award of punitive damages in an amount to be determined at trial for Defendants' unlawful conduct in violation of Texas law;

G.     For an award of prejudgment interest on the amount awarded and post-judgment interest until paid, to the maximum extent allowed by law;

H.     For an order pursuant to 15 U.S.C. § 1118, and by the common and statutory law of the State of Texas, requiring Defendants to deliver up for destruction all signage, labels, literature, items, stationery, prints, packaging, wrappers, advertising, business cards, goods and other materials in Defendants' possession bearing the Infringing Marks, the Red Cross Emblem or any other mark or logo that would violate the injunction entered herein;

39

I.    For an order requiring the Defendants to cease all use of the Infringing Marks, the Red Cross Emblem, or any confusingly similar variations thereto as part of the Defendants' trade or business names; and

J.    That the American Red Cross be awarded such other and further relief, at law or in equity, as the Court may deem just and proper.

By:    _/s/ Jeffrey S. Whittle_

Jeffrey S. Whittle
Texas SBN 24037813
jeffrey.whittle@hoganlovells.com
Amir Mohammad 'Ira' Jamshidi
Texas SBN 24092574
ira.jamshidi@hoganlovells.com
HOGAN LOVELLS US LLP
609 Main Street, Suite 4200
Houston, Texas 77002
T (713) 632-1400
F (713) 632-1401

Julia Anne Matheson (_Pro Hac Vice Pending_)
District of Columbia SBN 452692
julia.matheson@hoganlovells.com
Katherine M. Bastien (_Pro Hac Vice Pending_)
Virginia SBN 85569
katherine.bastien@hoganlovells.com
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T (202) 637-5600
F (202) 637-5910

**Counsel for Plaintiffs**
**American National Red Cross**

## CERTIFICATE OF SERVICE

I hereby certify that on, August 1, 2018, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by email to all parties who have entered appearances by operation of the Court's electronic filing system.

*/s/ Jeffrey S. Whittle*

Jeffrey S. Whittle